Reilly v BMK Inc. (2025 NY Slip Op 25246)

[*1]

Reilly v BMK Inc.

2025 NY Slip Op 25246

Decided on November 20, 2025

Civil Court Of The City Of New York, Queens County

Kagan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 20, 2025
Civil Court of the City of New York, Queens County

Michael Reilly, GERT MARKS DBA RBM REALTY COMPANY, Petitioners,

against
BMK Inc., & BKM CAR SERVICE INC., Respondents.

Index No. LT-318414-24/QU

Petitioner
Alma Madija, Esq. 
66-24 Fresh Pond Road
Ridgewood, New York 11385
Tel: 718-418-4150
Respondent
Autrey Glen Johnson, Esq. 
214-11 Northern Boulevard, Suite 200
Bayside, New York 11361
Tel: 718-424-5851 

Mark Kagan, J.

The petitioners have moved pursuant to CPLR §1021 seeking to substitute Laurel Hill Realty Corp., and Monica Megally as Administrator of the Estate of Gert Marks instead of Michael Reilly and Gert Marks. The respondents oppose the motion. Papers were submitted by the parties and after reviewing all the arguments this court now makes the following determination. 
This holdover action was commenced by the petitioners on November 19, 2024 concerning commercial rental space located at 36-48 38th Street, Ground Floor in Long Island City, Queens County. On May 3, 2025 Gert Marks passed away. On June 9, 2025 the Queens County Surrogate's Court appointed Monica Megally as the administrator of the Estate of Gert Marks. Moreover, on May 15, 2025 the property was sold to Laurel Hill Realty Corp. The petitioners now move seeking to substitute Monica Megally and Laurel Hill Realty Corp. The respondents oppose the motion arguing the substitutions are improper. First, they argue the substitution of Monica Megally is improper because once the property was sold Gert no longer maintained an individual interest and consequently Megally cannot be substituted since she [*2]likewise no longer has an interest which flows from Gert. Concerning the entity that purchased the property the respondents argue there are no assignments to that entity which entitle it to pursue the claims of the former owners. Therefore, they assert the motion must be denied.
Conclusions of Law
It is well settled that any conveyance of land, including a deed, can only be effectuated by a delivery of the written instrument (Manhattan Life Insurance Company v. Continental Insurance Companies, 33 NY2d 370, 353 NYS2d 161 [1974]). As the court observed in 219 Broadway Corp. v. Alexander's Inc., 46 NY2d 506, 414 NYS2d 889 [1979] "the underlying justification for viewing delivery as fundamental to the conveyance of an interest in land is not grounded in the blind application of what some may consider archaic principles of property law. On the contrary, delivery serves a very practical end. It is a common practice in the contemporary business world for parties to draft and sign instruments of conveyance prior to the time at which they intend their contemplated transaction to become irrevocable. By requiring delivery, the law facilitates the true expectations of the parties by ensuring that the interest in the property is not conveyed until that moment when the parties so intend" (id, see, also, Younge v. Guilbeau, 70 US 636, 18 L.Ed 262 [1865]). Thus, in one of the earliest recorded cases in New York state, Stephen M'Crea agreed to sell property to Wareham. M'Crea executed the deed but retained it as security until Wareham paid full consideration. M'Crea died while still in possession of the deed and Wareham thereafter sued arguing the property belonged to him. In rejecting that argument the court concluded that M'Crea as grantor possessed the deed at all times up until the moment of death. Therefore, "although formally executed, the deed was, therefore, in fact not delivered. It was in substance a conditional execution" (see, Jackson ex Dem. McCrea v. Dunlap, 1 Johns.Cas. 114, 1 Am.Dec. 100 [Supreme Court of New York, 1799]). Consequently, there could no conveyance of the property without a valid delivery. Of course, a grantor can physically deliver the deed to his or her attorney with instructions to deliver it to a grantee upon the grantor's death (Hered v. Nemethy, 15 AD2d 791, 224 NYS2d 723 [2d Dept., 1962]). The transfer to counsel, if proven true, relinquishes any control the grantor maintains over the instrument and thereby constitutes a sufficient delivery (see, Salzseider v. Salzseider, 219 NY 523, 114 NE 856 [1916], see, also, Radecki v. Radecki, 279 AD 1137, 112 NYS2d 764 [4th Dept., 1952]). However, the retention of the deed by the grantor confirms that no delivery has occurred.
This does not mean that the only way a conveyance of land can occur is by the physical delivery of the instrument. As the court noted in Sewell v. Home Insurance Company, 131 AD 131, 115 NYS 345 [2d Dept., 1909]) "there is no ritual of delivery" (id) or ceremony to effectuate a delivery. Rather, the grantor must have intent to unequivocally part with the instrument and to vest title to the grantee. Of course, physically delivering the deed to the grantee accomplishes this, however, if evidence exists of the grantor's intent then the actual location of the deed would prove irrelevant. Many states have specifically adopted that understanding. For example, in Alford v. Henderson, 237 Ala. 27, 185 So. 368 [Supreme Court of Alabama 1938] the grantor, Daniel Henderson, executed a deed giving forty acres of land to his daughter and son-in-law. Henderson died a few months later and the deed was found in a trunk in his room among his other papers. The court held that it really did not matter who actually physically possessed the deed, whether the grantor, the grantee or a third party. Rather, the only question that required consideration was whether the grantor intended to relinquish all ownership interests in the deed even if he still physically possessed it and the grantee was [*3]required to sustain that burden of proof of such "constructive delivery" (id). The court concluded the grantee failed to present sufficient evidence to establish such intent. Again, in Howard v. Arnett's Adm'r, 294 Ky 167, 171 SW2d 228 [Court of Appeals of Kentucky 1943] the court explained that a deed could be legally delivered even where the grantor still maintained possession. The court reasoned that intent to transfer was all that was required and that "title may vest in the grantee although the grantor retains manual possession of the deed if it is his intention that title shall pass. He merely constitutes himself the agent of the grantee for the purpose of delivery" (id). These cases demonstrate that the delivery of a deed is not really governed by any physical acts but rather by mere intentions. Indeed, the actual physical delivery is not, autonomously, the reason the transfer is effective, it is merely the manifestation of the grantor's intent and proof of such intent. In fact, a conveyance should be equally valid whether a grantor simply informs someone of a transfer, with no rights of retention, or actually and physically delivers the deed to the grantee.
New York has likewise endorsed this understanding. In Scrugham v. Wood, 15 Wend. 545, 30 Am. Dec. 75 [Supreme Court of the Judicature of New York 1836] the court held that a deed executed by the grantor and the grantee but kept in the possession of the grantor was validly delivered despite the deed's actual location. The court, citing earlier authority explained that "where a party to an instrument seals it, and declares in the presence of a witness that he delivers it as his deed, but keeps it in his own possession, and there is nothing to qualify that, or to show that the executing party did not intend it to operate immediately, except the keeping the deed in his hands, is a valid and effectual deed; and delivery to the party who is to take by the deed, or to any person for his use, is not essential" (id). Thus, the intention of the grantor is the true test in evaluating whether a delivery has taken place. If the intent of the grantor does not unequivocally demonstrate an intent to transfer the instrument then the deed will be void for want of delivery. Thus, in In re Malloy's Estate, 253 AD 30, 1 NYS2d 184 [3rd Dept., 1937], the grantor Malloy executed deeds with various grantees and had the deeds placed in his safe deposit box. They were discovered there upon his death. A lawsuit arose between those grantees and the beneficiaries of his will. The court held that no delivery had taken place. The court explained that "there is no proof in the record whatever of the necessary delivery contemplated by the law to divest Malloy's title. According to the record he did not part with possession or control of the property. The title therefore was in Malloy at the time he died and passed under the residuary clause of his will" (see, also, Jackson ex Dem. McCrea v. Dunlap (supra).
In this case although Gert Marks signed the deed on March 25 there is no evidence he intended to part with the property on that date and that therefore the deed was delivered on that date. It is true that he entered into a contract, and would perhaps breach the contract, if he failed to deliver the deed. However, Marks maintained the deed pending a closing of the property and the consummation of the sale including the full payment required pursuant to the contract. It would defy common sense to assert that there mere signing of the deed by Marks constituted a delivery prior to receiving full payment for that property and Marks' retention of the deed can only be understood in that light. Therefore, Marks surely maintained the authority and ability to cancel the deed and continued to exercise full control over it. Consequently, no delivery of the deed ever took place.
There is really little dispute that someone who has passed away can no longer transfer property. Therefore, Marks, who did not deliver the deed when he signed it, could likewise not deliver it when the closing took place and he was no longer alive. Thus, although Laurel Hill [*4]Realty Corp., duly purchased the property at the closing, an error in title has occurred. This error must be corrected by the administrator of the Estate of Marks who must issue a new confirmatory deed to Laurel Hill Realty Corp. To be sure, this correction is a mere formality which does not impinge upon Laurel Hill Realty Corp.'s rights as the true owner of the property. This is especially true since the conveyance from the other owner, Michael Reilly, suffers from no conveyance deficiencies. Therefore, the motion seeking to substitute Lauren Hill Realty Corp. is denied without prejudice with leave to renew upon the conveyance of the confirmatory deed.
Considering the motion to intervene, pursuant to CPLR §1021 "a motion for substitution may be made by the successors or representatives of a party or by any party" (id). Marks, as the owner of the property was entitled to pursue claims for rental arrears. Therefore, there is no reason to deny the Estate of Marks to likewise pursue claims for rental arrears. Thus, the Estate maintains standing to pursue such claims. Therefore, the motion seeking substitute Monica Megally as Administrator of the Estate of Gert Marks to pursue claims of rental arrears is granted.
So ordered.
Dated: November 20, 2025
Jamaica, NY
Hon. Mark Kagan, JCC